28286. GEORGIA HIGHWAY EXPRESS INC. *et al. v.* STURKIE.

Decided May 24, 1940. Rehearing denied June 29, 1940.

*Winsor Letton, William A. Mitchell Jr.*, for plaintiffs in error.
*G. Eugene Ivey, Irving S. Nathan,* contra.

Sutton, J. M. C. Sturkie brought suit against Georgia Highway Express Inc., and its insurance carrier, American Fidelity & Casualty Company, to recover damages of $575 which he alleged he sustained by reason of the negligence of the express company's driver of one of its trucks. The plaintiff alleged that on October 15, 1939, he parked his automobile a few feet to the west side of the Atlanta-Fairburn highway; that the express company's

truck, which was proceeding south toward Fairburn, ran off of the highway to the right, and struck the plaintiff's parked car; and that his damage was caused by such impact and by the negligence of the driver in not having the truck under control. The defendants answered, denying liability, and filed a cross-bill for damages, alleging that the collision was caused by the plaintiff's car being parked on a slope without proper braking facilities, and rolling into the highway, unattended and without lights, so suddenly that the driver of the truck could not avoid the collision. The jury returned a verdict in favor of the plaintiff for $460, and the exception is to the judgment overruling the defendants' motion for new trial.

The plaintiff testified, that he operated a filling-station, where he sold gasoline, oil, sandwiches, soft drinks, tires, and tubes, on the right or west side of the highway about six miles beyond College Park on the Atlanta-Fairburn highway; that two gasoline pumps were placed twelve or fourteen feet from the highway, resting on a cement apron forty to fifty feet long and about fifteen feet wide; that in front of the station was a slight grade toward Fairburn; that shortly before one o'clock on the night of the collision he drove his automobile in front of the station and parked it next to the pumps, facing south towards Fairburn, the left side being a few feet from the paved road, and the lights being left burning; that the brakes of the car were in good condition and had been repaired and relined about three weeks previously at a garage in Fairburn, and had been checked since that time; that the emergency hand-brake was pulled up, and the motor was stopped; that he had had no trouble as to the brakes coming off during the previous ninety days; that the car was a 1937 Buick sedan, a good used car, and cost about $590; that after parking the car he immediately went inside the small station building to turn out the lights and lock the door, and while inside heard a crash, ran to the door, and looking down the highway saw his car and the defendant's truck going over an embankment on the right side of the highway about fifty to seventy-five steps from the south side of the cement apron, the defendant's truck being right behind the plaintiff's car; that he then went to the cars, and shortly after arriving the driver of the truck crawled out of it, and, upon plaintiff's inquiry as to whether he was hurt,

answered that he was "stunned" a little; that upon being asked by the plaintiff why he had torn up the plaintiff's car he answered that he did not know, that "it just happened;" that he was very peaceable and did not say anything as to the plaintiff's car rolling out into the highway, hitting the truck, or running down in front of it; and that the defendant had refused to pay him for the damage done to his car.

M. R. Tarpley testified, that he repaired automobiles and sold used cars at Fairburn; that about September 18, 1939, he relined the brakes on all four wheels and overhauled the master cylinder of the plaintiff's car, and on October 6 thereafter personally supervised an adjustment of the brakes and found them in good condition, including the hand-brake; that the brakes would hold on any kind of an incline on a paved road; that he was a fair judge of used cars, and that in his opinion the value of the car before the accident was $550 and afterwards $65.

Gus Walker testified, that on the night of the collision, about one o'clock, he was driving from Atlanta and passed the defendant's truck two or three miles before reaching the plaintiff's filling-station, saw an automobile parked in front of the station off the highway and headed towards Fairburn, and saw there a boy who worked at the station.

Jim Pritchett testified, that he was on duty at the station on the night of the collision, went into the building just ahead of the plaintiff, and heard the crash; that he was sure the rear lights of the plaintiff's car were left on when it was parked, because he saw them; that he went to the cars after the collision. He corroborated the plaintiff as to what was there found and done, and what was said between the plaintiff and the driver of the defendant's truck.

J. W. Trout, who operated a garage, testified that the plaintiff's car, a 1937 Buick sedan, was then in his place of business; that he had been dealing in used cars fifteen or sixteen years; and that the plaintiff's car was then worth about $75.

W. H. Wilson testified for the defendant, that he was driving the defendant's truck, a Mack tractor and trailer, running about thirty-five to thirty-seven miles an hour as he approached the plaintiff's station, where the lights were burning inside but not outside; that just as he went over a hill and down grade the

plaintiff's car rolled into the highway in front of him; that he slowed down, blew his horn, started by the car and pulled to the left; that the car kept coming toward him, and the left front of it hit the right front of the tractor, and that wheeled the car around in the road, and the back of the car was thrown into the tractor, striking it with its left rear, and causing him to lose control, and both cars left the road; that the point of collision was about twenty-five steps or approximately fifty feet toward Fairburn from the south edge of the concrete apron; that there were no lights on the plaintiff's car when it struck the tractor, and it was approximately in the center of the road at the time of impact; that it angled into the road, and nobody was in it; that after the collision he told the plaintiff he was just stunned a bit, and did not talk about the circumstances of the accident; that he asked the first person that came along to call the police, and stayed with the wreck until the police came, and the plaintiff did not stay but gave his address, and the witness gave his, showed the plaintiff his driver's license, and told him where the company offices were; that the tractor was completely demolished and not worth fixing, but the trailer unhurt; that there was no traffic on the road that night or any in sight; that he had been working that day only since ten minutes before twelve, had been driving for the company about seven years, had no portion of the tractor or trailer off of the highway; that he was about fifty feet up the road when he saw the plaintiff's car ease out ahead of him; that he did not have time to stop his unit from the time he first saw the plaintiff's car and started by it, but might have reduced the speed ten miles an hour; that the plaintiff's car entered the highway about ten feet south of the pumps and angled across the road generally toward Fairburn; that the witness did not go to sleep and run off the highway and hit the plaintiff's car; that the car entered the highway when the witness was about thirty-five to forty feet from the station, and he slowed down about three miles an hour after he saw it, at which time he was something like 126 feet from the car; that he was on the left-hand side of the center of the highway when the plaintiff's car hit his tractor and about a foot from the middle, having driven the truck to the left side of the middle of the road, and if the plaintiff's car had not come over the center of the road he would have missed it.

W. F. Whitaker testified, that he was a police officer, a part of whose duties was to investigate wrecks and physical signs; that he investigated the wreck in question, found the driver of the tractor there, examined the road in front of the station and on down to where the cars left the road; that at about twenty-five steps below the drive into the station he found some little marks where the tires seemed to have had a contact, and the gravel under the tire made a mark on the pavement; that there was no sign of the brakes being appplied; that he found no such marks of that nature between the point described and the station; that twenty-five steps south of the station the car and truck left a rock mark, and the rock went down across the bank to the bottom place, and he could trace the marks from the point of contact along the road to where they came to rest; and that he did not find any signs between the point described and the station building which would indicate to him that there had been any impact between the two cars.

G. C. Ennis testified that he was auditor for the defendant, familiar with cost of equipment; and that the market value of the company's tractor was approximately $1000 before the collision, and of no value afterward, except that parts to the value of $200 could possibly be used from it.

The plaintiffs in error contend that the verdict was not authorized, because the evidence on behalf of the plaintiff was only circumstantial, and could not establish as a fact that the defendant's truck had run into the parked automobile, inasmuch as the positive, direct, and uncontradicted testimony of the sole eyewitness, its driver, was that the truck did not leave the highway at the filling-station, but that the plaintiff's automobile left its parking place and ran onto the highway and against the defendant's tractor in the manner detailed in the evidence. It is true that direct, uncontradicted, reasonable, and unimpeached testimony should prevail over circumstantial evidence if perfectly consistent therewith, but from the circumstantial evidence introduced on behalf of the plaintiff the jury was authorized to find that the direct and positive testimony of the defendant's driver, not contradicted by any witness, was not perfectly consistent with the circumstantial evidence. According to the evidence for the plaintiff, the brakes of his car, including the hand-brake, had been thoroughly repaired less than thirty days before the collision, and had been rechecked

nine days before, and were in perfect working condition. The plaintiff testified that the hand-brake was pulled up when he parked his car, and just before the collision a passing motorist saw the car parked beside the pumps. The plaintiff's automobile was a good used car, a 1937 Buick sedan. The witness who had repaired the brakes testified that they would hold the car on any incline on a pavement; and it is a fact so patent as to amount to common knowledge that a good used car, with an effective hand-brake pulled up into its proper position, will not leave its place of rest, even on an incline, unless some external force be applied. If the plaintiff's car was so held by the brakes, in the effective condition testified to by the mechanic who repaired them, the jury would be authorized to find that the car did not of itself and gravity run onto the highway. Hence the positive testimony of the defendant's driver, that the car did run, unattended, onto the highway, could not be said to be consistent with the circumstantial evidence. Nobody passed the defendant's truck but the witness who saw the plaintiff's car parked by the pumps, and, according to the driver of the truck, there was otherwise no traffic on the highway at or about the time of the collision. There was testimony of a police officer that he found no marks within the area of the filling-station, such as to indicate than any contact thereon had been made between the two cars, but on account of the cement apron and lack of anything which would register or indicate contack, so far as the evidence shows, the jury was authorized to find that this testimony was not such as to prove to their satisfaction that an impact had not taken place where the plaintiff had parked his car.

Relatively to the comparative weight of positive and circumstantial evidence it was said, in *McRae* v. *Wilby*, 59 *Ga. App.* 401, 408 (1 S. E. 2d, 77): "Undoubtedly, in the case of unimpeached disinterested witnesses, it is clear that their direct and uncontradicted testimony can not be overcome by circumstantial evidence which is consistent with such testimony. As was held in *Frazier* v. *Georgia Railroad & Banking Co.*, 108 *Ga.* 807 (33 S. E. 996), 'When a plaintiff's right to recover depended upon the establishment of a particular fact, and the only proof offered for this purpose was circumstantial evidence from which the existence of such fact might be inferred, but which did not demand a finding to

that effect, a recovery by the plaintiff was not lawful, when, by the positive and uncontradicted ·testimony of unimpeached witnesses, which was perfectly consistent with the circumstantial evidence relied on by the plaintiff, it was affirmatively shown that no such fact existed.' See also *Taggart* v. *Savannah Gas Co.,* 179 *Ga.* 181 (175 S. E. 491); *Griffin* v. *Barrelt,* 183 *Ga.* 152, 165 (187 S. E. 828); *Neill* v. *Hill,* 32 *Ga. App.* 381, 382 (123 S. E. 30); *Emory University* v. *Bliss,* 35 *Ga. App.* 752 (134 S. E. 637). In *Neill* v. *Hill,* supra, it was also held: 'The testimony of witnesses who swear positively, and are not otherwise impeached or discredited, should not be discarded merely because they are related to the party in whose behalf they testify, although it is proper for the jury to consider such relationship *when there is other matter by reason of which they may legitimately question the credibility of the testimony.'* [Citing; italics ours.] A fact can be proved by circumstantial evidence as well as by direct proof, and physical facts and circumstances may be sufficient to authorize the jury to disbelieve the witnesses of a party and to thereby impeach them. *Atlantic and Birmingham Railway Co.* v. *Clute,* 3 *Ga. App.* 508 (60 S. E. 277); *Emory University* v. *Bliss,* supra; *Central of Georgia Ry. Co.* v. *Grace,* 46 *Ga. App.* 101, 102 (166 S. E. 684). 'Implications inconsistent with the testimony may arise from the proved facts; and in still other ways the question of what is the truth may remain as an issue of fact despite uncontradicted evidence in regard thereto.' *Cooper* v. *Lumbermen's Mutual Casualty Co.,* 179 *Ga.* 256, 261 (175 S. E. 577). . . Again, 'The rule that the uncontradicted testimony of unimpeached witnesses can not lawfully be arbitrarily disregarded "does not mean that the jury are obliged to believe testimony which under the facts and circumstances disclosed they in fact discredit, but means that they are to consider the testimony of every witness who is sworn, and not arbitrarily disregard the testimony of any witness." *Wilson* v. *Gray,* 34 *Ga. App.* 320 (129 S. E. 297).' *Fincher* v. *Harlow,* 56 *Ga. App.* 578, 581 (193 S. E. 452). 'The interest of a witness in the result of the suit may always be considered in passing upon his credibility; and where there are circumstances inconsistent with the truth of his testimony, the jury are not obliged to believe him, even though he is not contradicted by any other witness.' *Detwiler* v. *Cox,* 120 *Ga.* 638 (48 S. E. 142). 'The fact that a witness

is an employee of one of the parties is a proper matter to be considered by the jury in passing upon his credibility.' *Central of Georgia Railway Co.* v. *Bagley,* 121 *Ga.* 781 (4) (49 S. E. 780). See also *Central Railroad &c.* v. *Maltsby,* 90 *Ga.* 630 (16 S. E. 953)."

The driver of the defendant's truck was clearly an interested witness; and under the law above set forth, and in view of the circumstantial evidence inconsistent therewith, the jury was not obliged to accept his testimony that he did not leave the highway and strike the plaintiff's car but that the car ran onto the road and against his tractor. In the absence of any other force acting upon the parked car, and the driver of the tractor having admittedly been passing by the filling-station, and the crash having been heard by the plaintiff and his employee in the brief interval after the plaintiff had parked his car and entered the station building, the jury was also authorized to find that the defendant's truck had negligently been allowed by its driver to leave the highway, to strike against and knock or push the parked car onto the highway, and to damage it in the amount sued for.

■ The special grounds of the motion for new trial have been carefully considered and found to be without merit, and inasmuch as they involve no questions of law which, applied to the facts, require detailed discussion any elaboration is deemed unnecessary.

*Judgment affirmed. Stephens, P. J., concurs.*

FELTON, J., dissenting. Assuming for the sake of argument that the plaintiff made out a prima facie case, the circumstantial and opinion evidence was not sufficiently inconsistent with the positive testimony of the driver of the truck to authorize a jury to refuse to accept the positive testimony in preference to the circumstantial evidence, especially in view of other circumstantial evidence which corroborated the direct testimony. While it is true that the brakes on the automobile would have made it improbable that the car rolled down the grade, it is also improbable that the truck dragged the car down the road without leaving a sign, such as tires dragging against pavement, for a distance of twenty-five feet. The testimony as to the brakes being pulled up on the car, and that the car would not roll with the brakes applied, was not direct testimony on the question whether the car rolled down the incline or not. I dissent from the judgment of affirmance.