35004. PEGGY ANN OF GEORGIA, INCORPORATED *v.* SCOGGINS *et al.*

DECIDED APRIL 9, 1954.

*T. J. Long, Paul F. Akin, Warren Akin,* for plaintiff in error.
*Jefferson L. Davis, Davis & Cullens,* contra.

FELTON, C. J. In *Scoggins* v. *Peggy Ann of Georgia,* 87 *Ga. App.* 19, 23 (73 S. E. 2d 79), the defendant contended that the issue of defective brakes remained in the case even after amendment because of the "presumption" stated in *Georgia Highway Express* v. *Sturkie,* 62 *Ga. App.* 741, 746 (9 S. E. 2d 683). The second division of this court ruled against the contention. We think the correct statement of that principle is stated in *Wright Contracting Co.* v. *Waller,* 89 *Ga. App.* 827, 833 (2a): "This court will take judicial cognizance of the fact that, *in cases not involving unusual and extraordinary conditions and circumstances,* effective and efficient brakes, if properly set, will hold an automobile on an incline, in the absence of some external force being applied." (Emphasis supplied.) If the court in *Scoggins* v. *Peggy Ann of Georgia,* supra, did not recognize the exception to the principle, then it erred in allowing the petition to stand on an allegation of a thing declared impossible by the principle. However, such ruling became the law of the case. If the court did recognize the exception to the principle, then they could have construed the plaintiffs' allegation that the use of "scotch blocks" was the only means by which buses with efficient brakes could be held stationary on the defendant's premises as alleging unusual and extraordinary conditions and circumstances, the exception to the principle. In either case the plaintiffs would have had to prove the same thing, i.e., that the use of "scotch blocks" was the only means of keeping buses with efficient brakes in a stationary position on the defendant's parking area. Therefore, the only questions for consideration are: (1) did the evidence authorize a finding that Peggy Ann of Georgia, Inc., accepted the responsibility of placing "scotch blocks" under the wheels of all buses stopping on its premises in all events? and (2) did the evidence authorize a finding that the use of "scotch. blocks" was the only means whereby buses with efficient brakes could be kept at a firm standing position while parked on the defendant's parking area? If the answer to either of the above questions is yes, the verdict was authorized.

The pertinent evidence concerning question number (1) is as follows: F. G. Cole, president of the defendant corporation and manager of the bus stop, testified in part as follows: "As to whether or not some five, six or seven years prior to this time I had scotch blocks brought up there to this place of business;

well, yes, I have had blocks brought up there two or three different times. Yes, the Southeastern Greyhound Lines have sent blocks up there. As to whether or not I brought some blocks up there; well, the corporation brought some blocks. Yes, Peggy Ann of Georgia, Inc., has had blocks made for the purpose of scotching those buses. . . Yes, that was during the time the corporation was operating this place of business up there that Knight Mercantile Company has sent blocks up there for Peggy Ann on more than one occasion. Yes, I would order those for the corporation and have them made to my specifications, and those were charged to the corporation and I paid it. Yes, I knew what those blocks were for; I knew they were to scotch the bus. . . As to whether or not I have done that a time or two myself; well, yes, I have. I have been out in the driveway when buses would come in, would be standing out there, a block would be handy, of course, I wouldn't go to any trouble doing it. I would kick it under the wheel for the driver. I have done that. No, I didn't want anybody to get hurt up there, I sure didn't. I tried to keep down accidents. Yes, I knew about those blocks and for what purpose they were intended, what they were there for. I knew myself that they were used for that purpose. We had a place up there, built a box, four boxes, those blocks would go down in this box. Four blocks could be put in that box, keep those blocks in that box for the purpose of scotching those buses. . . I never had any agreement or understanding with the Southeastern Greyhound Lines that I would furnish any scotch blocks and that I would at all times place those scotch blocks under those buses. As to whether or not I ever had any conversation with the officers of the Southeastern ·eyhound Lines about that subject; well, yes, it was discussed with me and Mr. Arrington, who has now passed away, and Richardson, who took Mr. Arrington's place when he died, about placing some blocks up there. As to what position Mr. Arrington held with the Southeastern Greyhound Lines; well, he was the regional manager, and he directed the affairs of that company in this section. As to what that conversation was that I had with him about these blocks; well, he told me to get some blocks, scotch for the buses, and I went ahead and got the blocks several times, and he also, his supervisor, sent blocks up there and brought

blocks up there. As to what this man said to me about me or my employees scotching those buses; well, Mr. Arrington didn't say anything to me; it was Richardson. He said to get one of your boys to come out there and have him scotch these buses when the buses come in. I told him, I says, Rich, my boy don't have time to scotch those buses, but I says, I will tell him if he happened to be out there to scotch the buses, but he has got a lot of work to do, so many buses come in there each day it would take a regular man, a full-time job, to stay out there and scotch these buses. I never did take in behalf of my corporation, the Peggy Ann Company, the obligation to scotch those buses as they came in. Yes, I mentioned a moment ago that I had on occasions scotched the buses. When I did that as to whether or not I was doing it as an accommodation to the driver or whether I was doing it as an obligation to anybody; well, I didn't feel like I was obligated to do it. When the Negro did it, I told him to do it if he happened to be out there, a lot of times he would be out there sweeping up the driveway and things like that when the bus come in; see, a lot of times when he would be out there doing things like that, I said, if a bus comes in, it won't hurt you to put the block under the bus, and he has done it. As to who usually put the bus; well, the driver was supposed to; the driver of the bus. When I went and got those blocks I brought them up there for the use of the drivers, and they did use them, yes, sir."

Julius C. Newsom, the driver of the bus on which the deceased was riding at the time of her injuries, testified in part: "Yes, I scotched the bus myself. As to where I got the scotch blocks; well, you generally had to hunt one. Generally, they were laying on the bank on the right-hand side. Yes, I got one on this particular night and scotched the bus. Yes, sir, on those other occasions that I came there, I likewise scotched the bus, and I would pull up the brakes; I would pull the emergency brakes up. Yes, they were functioning properly. Yes, on the other occasions I pulled up the emergency brakes. Yes, I expect I had stopped in there 600 times before this accident, and on all of these other occasions I went in there and did just exactly what I did on this occasion, pulled up my brakes and scotched my bus, and on those occasions it held. . . I got directions to put

scotch blocks under my buses at that point from our company, the Southeastern Greyhound. I scotched the left front wheel. As to what size scotch block I put under it; well, it was about two feet long, and I would say about three inches. I did not put any scotch block under either of the rear wheels. As to why I didn't do that; well, I guess the reason I didn't do it was because it was raining."

Charlie Jackson testified in part: "Yes, I was employed at the Peggy Ann bus stop. . . As to whether or not Mr. Jack Cole ever gave me any instructions relative to the scotching of these busses; well, I have put blocks up under them up there. Yes, sir, I mean that I have scotched buses at times. As to who told me to put those blocks under them; well, nobody particularly told me, I just knowed to put the blocks up under them if I saw one drive up there. I knowed just about all the drivers, and I just put it under there because they had the blocks up there for them. Yes, sir, I have put them underneath them. Yes, sir, at the time I put them under them I was an employee of Peggy Ann. As to whether or not I did that because I knew the drivers, and I was out there, and I just did it as an accommodation to the drivers; well, yes, sir, to hold the bus up there. No, sir, nobody particularly told me to do it. As to who I know put them under there when I wasn't out there; well, the drivers of the buses. When I happened to be out there and a bus come up there and stopped, as an accommodation to him, with me already on the ground, I would just put the scotch block under the wheel."

Erwin Pruitt testified: "I work for Thompson-Weinman now. Yes, sir, I have worked for Peggy Ann bus stop. I worked up there a little over a year in all. Yes, sir, when I worked up there I saw buses coming and going up there. Yes, sir, I have saw scotch blocks up there; I signed for some of them. Knight Mercantile Company brought them up there. They brought them in a truck. I showed them where to put them. Yes, sir, I have put scotch blocks under a bus that stopped up there; I couldn't remember the times, but I put some under them. As to whether or not anybody ever told me to put scotch blocks under buses up there; well, yes, sir, Mr. Cole told me and one of the bus supervisors, but I can't remember his name. Yes, sir, I am

talking about Mr. Jack Cole, the gentleman sitting over there, and the bus inspector also told me. He is out there, he told me the instructions to put the blocks under the bus. I said that Mr. Cole gave me instructions. As to whether or not I said something about a man outside that gave me instructions to put them under there; well, Mr. Cole gave me instructions. Yes, that man out there, Pursell, he told me too. He is an inspector for the bus company. I was the janitor up at Peggy Ann. That required me to keep up the yards, keep the place clean, cleaned up. Yes, sir, my job as janitor kept me working around that place for Mr. Cole. As to whether or not I couldn't meet all of of the buses that come in there and put scotch blocks under them; well, while I was there, yes, sir. As to whether or not I mean that I met every bus that come there and put scotch blocks under them; well, while I was there, yes, sir. I went to work at seven o'clock in the morning, and I got off at seven in the evening. As to whether or not every bus that come in there from seven o'clock in the morning until seven o'clock at night I put scotch blocks under every one of them; well, yes, sir. As to whether or not as you understand my testimony every bus that came into that place from seven o'clock in the morning until seven o'clock at night while I was working there, that I put scotch blocks under them, every one of them; well, yes, sir. I worked there a little over a year in all. Yes, sir, the drivers put some under there. As to why I was putting them under there if the drivers were putting them under there; well, sometimes they would be putting on. As to what I mean is if I was around out there and the bus stopped, as a courtesy to the driver I would put the block under the wheel; well, that is right."

This evidence did not authorize a finding that Peggy Ann of Georgia, Inc., accepted the responsibility of placing "scotch blocks" under the wheels of *all* buses stopping on its premises *in all events*.

The evidence pertinent to question number (2) was as follows: Newsom, the bus driver, testified in part: "In my opinion, as to whether or not a Greyhound bus of the size I was driving that night [will] hold a firm, standing position parked where it was without the use of a scotch block; well, it should, yes, sir; I think the brakes would be sufficient to hold it. . . Yes, I think good brakes would hold it without a scotch block."

Robert Head, a mechanic, testified in part: "In my opinion, a bus of that size with proper brakes, as to whether or not would be likely to roll down the south approach from that bus stop if it were empty or loaded, well, I would rather scotch it. I said that I had rather scotch it."

This evidence was insufficient to authorize a finding that the use of "scotch blocks" was the only means by which buses with efficient brakes could be held in a stationary parking position on the defendant's parking lot. The testimony of the bus driver, "Yes, my brakes were efficient on this night," coupled with his testimony that on the night in question he had set his brakes did not authorize the jury to reason that properly set efficient brakes did not hold the bus in this instance and infer from such reasoning that all buses with properly set efficient brakes would not hold a stationary position on the defendant's parking area without the aid of "scotch blocks".

The court erred in denying the motion for a new trial.

*Judgment reversed. Quillian and Nichols, JJ., concur.*